**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **DYLAN KAPIT,** | |
| **Plaintiff,** | **Case no. 1:20-cv-3960** |
| **v.** | **Complaint and** |
| | **Jury Demand** |
| **QUAD PREPARATORY SCHOOL,** | |
| **Defendant.** | |

**PRELIMINARY STATEMENT**

1. This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and the New York State Human Rights Law, N.Y. Exec. Law §290, et seq. ("NYHRL") and the New York City Human Rights Law, N.Y.C. Administrative Code §8-101 et seq. ("NYCHRL") based on sex and sex stereotyping, including gender, gender expression, and gender identity.

**PARTIES**

2. Plaintiff Dylan Kapit is a citizen of the United States and a resident of New York County, New York.

3. Plaintiff Dylan Kapit was employed by Defendant QPS as a teacher.

4. Plaintiff Dylan Kapit is a nonbinary, and gender non-conforming transgender person, who uses the singular pronouns "they" and "them" to refer to themselves.

5. The singular pronouns "they" and "them" are used in this Complaint to refer to Mx. Kapit. References to "they" and "them" in regard to Mx. Kapit refer to Mx. Kapit alone, unless otherwise stated.

6. It is appropriate to refer to a nonbinary and gender non-conforming person with neutral honorifics. Plaintiff uses the gender-neutral honorific "Mx".

7. Defendant Quad Preparatory School ("QPS") is a 501(c)(3) nonprofit corporation organized and existing under the law of the State of New York with its principal place of business at 25 Pine Street, New York, NY 10005.

8. At all relevant times, Defendant QPS has continuously been doing business in the State of New York and has continuously employed over fifteen (15) employees.

9. At all relevant times, Defendant QPS has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

10. At all relevant times, Defendant QPS has continuously been an employer as that term is defined in N.Y. Exec. Law §292.5.

11. At all relevant times, Defendant QPS has continuously been an employer as that term is defined in N.Y.C. Administrative Code §8-102.

## PROCEDURAL HISTORY

12. On or about December 18, 2019, Plaintiff Mx. Kapit filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC" or "Commission") alleging discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 by Defendant QPS.

13. On information and belief, the EEOC provided Defendant QPS with notice of the charge of discrimination.

14. On February 21, 2020, the EEOC issued a Notice of Right to Sue letter to Plaintiff Mx. Kapit.

15. Plaintiff took all necessary steps to exhaust their administrative remedies.

16. Plaintiff took all necessary steps to fulfill all conditions precedent to the commencement of this lawsuit.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action is based on Title VII of the Civil Rights Act of 1964 and pursuant to 28 U.S.C. § 1337 because the action is based on a federal statute regulating commerce.

18. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy as the federal claims.

19. Venue is proper in the United States District Court for the Southern District of New York pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices are alleged to have been committed within the jurisdiction of the Southern District of New York.

## FACTS

### Sex, Sex Stereotyping, Gender, and Gender Expression

20. *Sex* is a term that includes gender and gender expression within its meaning.

21. *Sex stereotyping* refers to the application by an employer of stereotypes related to sex to restrict, disparage, or discriminate on the basis of an employee's gender expression.

22. *Gender* refers to cultural expectations specific to the sexes.

23. *Gender expression* refers to a person's gender-related appearance and behavior, whether or not stereotypically associated with the person's sex assigned at birth.

24. *Transgender individuals* are people who have a gender expression or identity that does not match the sex they were assigned at birth.

25. *Gender non-conforming* is a term used to describe a person whose gender expression differs from gender stereotypes, norms, and expectations in a given culture or historical period. Terms associated with gender non-conformity include, but are not limited to, gender expansive, gender variant, or gender diverse.

26. *Non-binary* is a term used to describe a person whose gender identity is not exclusively male or female. For example, some people have a gender identity that blends elements of being a man or a woman or a gender identity that is neither male nor female.

27. Discrimination against transgender people, including non-binary and gender non-conforming people, for being transgender is based on their sex, sex stereotyping, gender, and gender expression.

**Employment with Defendant QPS**

28. Plaintiff Mx. Kapit was employed by the Defendant WPS as a Math teacher in the lower school from August 27, 2018 until their constructive discharge in December 2019.

29. During this time, they were subjected to abusive and transphobic comments about their gender by co-workers.

**Inappropriate Behavior by Plaintiff's Supervisors**

30. During their first year, one of Mx. Kapit's supervisors, Danielle Franciosa asked them unwanted and invasive questions about their body, including questions about trans related surgeries.

31. This occurred numerous times.

32. Later in the year, Ms. Franciosa had students argue against gender neutral bathrooms.

33. These comments were unwelcome and distressing to Mx. Kapit.

34. Kristin Berman, the head of school and senior administrator at QPS, refused to make eye contact with Mx. Kapit when they were wearing makeup or otherwise having a more feminine gender expression.

35. Mx. Kapit made a complaint about this incident to Stacey, an HR representative for Defendant QPS.

36. No effective action was taken by Defendant QPS in response to this complaint.

37. No subsequent measures were taken to educate staff members on LGBTQ issues.

38. Mx. Kapit was also subjected to inappropriate comments regarding their dress and appearance by coworkers and managers at QPS.

39. They were reprimanded for wearing shorts by Rebecca Benghiat, COO and HR representative.

40. The length of Mx Kapit's shorts was deemed to be inappropriately short by Ms. Benghiat.

41. Cisgender teachers wore dresses and skirts of the same length and received no discipline.

42. Cisgender refers to people who are not transgender, non-binary or gender non-conforming.

43. Ms. Kapit was consistently treated differently to their cisgender coworkers with regard to their dress and appearance.

**Failure to Address Concerns About Gender Appropriate Facilities**

44. Mx. Kapit made at least three requests for adequate gender-neutral bathroom facilities.

45. Mx. Kapit identified the need for appropriate facilities as an issue prior to starting their work with Defendant QPS.

46. They did so by bringing this issue to the attention of Ms. Benghiat.

47. This request was supported by the rest of the teaching staff, but was repeatedly denied.

48. Mx. Kapit presented a petition form the entire staff identifying this as an issue and requesting appropriate facilities.

49. Even still, this request was denied.

50. Instead, they had to share a single-stall bathroom with fourteen other people, which made them feel uncomfortable and unsupported in their work environment.

**Reprimanding of Mx. Kapit for Discussion of Gender and Support of Students**

51. Mx. Kapit made numerous efforts to support students who were exploring gender identity and gender expression.

52. QPS managers and administrators have responded to this with hostility and reprimanded Mx. Kapit.

53. When Mx. Kapit posted on their personal social media regarding their support of a transgender student (obscuring the student's identity and protecting the student's personal information), they were disciplined and forced to sign an acknowledgement that they understood guidelines regarding student privacy.

54. QPS then implemented a reactionary addenda to the handbook and emails stating that staff should not post any information about the school on social media.

55. Upon information and belief, these measures were taken in response to Mx. Kapit's discussion of sex and/or gender, not out of a specific concern for student privacy.

56. Mx. Kapit also made efforts to support a transgender female student who was being misgendered and bullied by other students.

57. When they spoke to QPS administrators about this, they did not receive a response.

58. Mx. Kapit was deeply distressed by the hostility and lack of support for transgender and gender non-conforming students by QPS and its managers and administrators.

59. This also caused them distress in relation to their own status as a transgender and gender non-conforming member of the QPS community, and was detrimental to their mental health.

60. Mx. Kapit was instructed by QPS administrators, including Emily Vizza, the lower school clinical director, and Kim Busi, the founder and head of school, not to discuss gender at school.

61. Mx. Kapit was told that discussion of LGBTQ issues in particular was inappropriate, and that the "students wouldn't understand".

62. This was untrue. In their first year, Mx. Kapit started a curriculum diversity committee to help staff better understand LGBT and diversity issues.

63. This was relegated to June as a "Pride month" topic.

64. Ms. Vizza told Mx. Kapit in an oral conversation that any discussion of LGBT and diversity issues outside of June was "off limits" through the rest of the year.

65. When the issue was brought up by students, Ms. Vizza  refused to use the word transgender and Mx. Kapit was told to "put these issues aside".

66. This indicated a hostility to Mx. Kapit's gender.

**Failure to Provide Training on Gender Issues**

67. Mx. Kapit notified QPS administrators that they thought training should take place to address gender in the classroom.

68. This was in response to the issue of transgender students being bullied and misgendered.

69. Mx. Kapit was told outside trainers would come in to the classroom of the transgender student for formal training.

70. This outside training never occurred.

71. Instead, on November 25, 2019, Ms. Vizza, who was not LGBTQ and not a specialist in gender issues, held a class discussion on "respect".

72. Mx. Kapit was given no notice of this discussion taking place and found out about it at midnight the night before it was due to occur.

73. Mx. Kapit was told they were not allowed to speak at this.

74. The discussion was poorly handled and Ms. Vizza refused to discuss transgender issues and gender identity.

75. Ms. Vizza ignored students who asked questions about the topic.

76. This reinforced Mx. Kapit's sense of isolation and lack of support and the hostility by Defendant QPS and its administrators to issues of gender and gender identity and had a detrimental effect on their mental health and a harmful impact on their identity as a transgender person.

**Retaliatory Investigation of Mx. Kapit and Forced Administrative Leave**

77. In late November 2019, shortly after this training, Mx. Kapit received a call from Ms. Busi and Ms. Benghiat.

78. Ms. Busi and Ms. Benghiat informed Mx. Kapit that they were being placed on leave and were no longer allowed to come to school due to "concerning information".

79. They were told they could have no contact with the school and no communication with staff or students.

80. They were not provided with further information about what the issue was.

81. Since then, they have learned that they are being investigated for "inappropriate" conversations with a student.

82. The student in question had reached out to Mx. Kapit about opposing discrimination.

**Constructive Discharge**

83. QPS found fault with Mx. Kapit because of their gender, their gender expression and their discussion of gender with students and others.

84. QPS administrators created an intolerable and hostile work environment for Mx. Kapit.

85. Mx. Kapit made a number of complaints to HR and to QPS administrators, including an EEOC charge.

86. QPS did not take prompt and effective action to resolve Mx. Kapit's concerns.

87. The investigation and forced leave was discriminatory adverse action because of Mx. Kapit's gender and gender identity, and in retaliation for their opposition to discrimination.

88. As a result of the discrimination, the hostile work environment and the adverse action taken against Mx. Kapit by QPS on the basis of sex and in retaliation for their opposition to discrimination, Mx. Kapit found themselves in an environment so hostile to their gender that no reasonable person would continue in such an environment.

89. For this reason, they submitted their resignation on December 30, 2019.

90. This involuntary resignation amounts to a constructive discharge by QPS.


**CAUSES OF ACTION**

**COUNT 1**
**42 U.S.C. §2000e, et seq.**
**Hostile Work Environment**

91. Plaintiff Mx. Kapit incorporates by reference the preceding paragraphs as if fully set forth herein.

92. Mx. Kapit is a member of a protected category with regard to sex and gender.

93. After becoming aware of Mx. Kapit's gender, Defendant QPS's managers instituted a campaign of harassment and discrimination on the basis of sex and sex stereotyping, including gender, gender expression, and gender identity, and adopted adversarial attitudes and hostile demeanors.

94. This harassment was frequent, severe and pervasive, physically threatening, and continuous.

95. Mx. Kapit was targeted for harassment and subjected to a hostile work environment by their managers and administrators because of their sex and sex stereotyping.

96. The discriminatory acts were unwelcome to Mx. Kapit.

97. Discriminatory intimidation, ridicule, and insult permeated the work environment, and was sufficiently severe or pervasive to alter the conditions of Mx. Kapit's employment and to create an abusive working environment, as detailed herein.

98. Defendant QPS's managers and administrators made statements that demeaned Mx. Kapit's sex and gender, as detailed herein.

99. This hostile environment unreasonably interfered with Mx. Kapit's ability to perform their job duties, by disrupting their relationship to Defendant QPS and its management, by the unreasonable criticism and scrutiny of Mx. Kapit's sex and gender which flowed directly from Defendant QPS's failure to take prompt and effective action to stop the hostile work environment, by Mx. Kapit's need to spend many hours on otherwise unnecessary grievance processes and other means of seeking relief, and their reasonable fear for their safety, amongst other reasons, and created working conditions intolerable to a reasonable person.

100.   The effects of the hostile environment alleged herein were felt by Mx. Kapit daily.

101.   The hostile environment was severe, including threats of bodily harm, reasonably

invoking fear of physical confrontations.

102.   Many events contributing to this hostile work environment occurred within the 300-day

period prior to Mx. Kapit's first EEOC charge.

103.   Mx. Kapit perceived the working environment to be abusive or hostile.

104.   A reasonable person in Mx. Kapit's circumstances would consider the working

environment to be abusive or hostile.

105.   Harassment of Mx. Kapit was motivated by their sex and gender.

106.   Defendant QPS was on notice of the hostile work environment, including actual notice by

means of complaints made by Mx. Kapit to Defendant as detailed herein, and vicariously and

constructively by means of the acts perpetrated by Mx. Kapit's direct supervisor.

107.   Defendant QPS did not undertake prompt and effective efforts sufficient to stop the

hostile environment detailed herein.

108.   As a direct and proximate result of Defendant QPS's unlawful discrimination, Mx. Kapit

incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of

life, emotional distress, damage to their professional reputation, and other pecuniary and non-

pecuniary losses.

109.   By engaging in the conduct described above, Defendant QPS discriminated against Mx.

Kapit intentionally, knowingly or recklessly with regard to Mx. Kapit's federally and state

protected rights, for which Plaintiff seeks punitive damages.

**COUNT 2**
**42 U.S.C. §2000e, et seq.**
**Retaliation**

110.    Plaintiff Mx. Kapit incorporates by reference the preceding paragraphs as if fully set forth herein.

111.    The effect of Defendant QPS's acts complained of above was to deprive Mx. Kapit of equal employment opportunities as an employee because of retaliation for their complaints of discrimination in violation of Title VII and Title I of the Civil Rights Act of 1991.

112.    By complaining to Defendant QPS about the discriminatory practices and hostile work environment described herein, opposing said practices and hostile work environment directed at them, Mx. Kapit engaged in activities protected by Title VII.

113.    Mx. Kapit's exercise of protected rights was known to Defendant QPS.

114.    Following and because of Mx. Kapit's Title VII protected conduct, Mx. Kapit was subjected to tangible or adverse employment actions.

115.    The actions taken against Mx. Kapit would dissuade a reasonable employee from making or supporting a complaint of discrimination.

116.    By engaging in the conduct described above, Defendant QPS intentionally retaliated against Mx. Kapit with malice or reckless indifference to Mx. Kapit's federally protected rights to oppose practices that are prohibited by Title VII.

117.    As a direct and proximate result of Defendant's unlawful retaliation, Mx. Kapit has incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to their professional reputation, and other pecuniary and non-pecuniary losses

**COUNT 3**
**42 U.S.C. §2000e, et seq.**
**Constructive Discharge Because of Sex and/or Gender**

118.    Plaintiff Mx. Kapit incorporates by reference the preceding paragraphs as if fully set forth herein.

119.    Mx. Kapit is a member of a protected category with regard to sex and gender.

120.    The effect of Defendant QPS's acts complained of above was to create an intolerable work environment.

121.    Mx. Kapit perceived the working environment to be intolerably abusive or hostile.

122.    A reasonable person in Mx. Kapit's circumstances would consider the working environment to be intolerably abusive or hostile.

123.    Defendant QPS was on notice of the hostile work environment, including actual notice by means of complaints made by Mx. Kapit to Defendant as detailed herein, and vicariously and constructively by means of the acts perpetrated by Mx. Kapit's direct supervisor.

124.    The effect of the intolerable work environment was such that Mx. Kapit's resignation was not voluntary and amounts to a constructive discharge by Defendant QPS.

125.    As a direct and proximate result of Defendants' unlawful constructive discharge, Plaintiff incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, physical injury, damage to their professional reputation, and other pecuniary and non-pecuniary losses, which damages would not have occurred but for Defendants' discrimination.

126.    By engaging in the conduct described above, Defendant QPS caused Mx. Kapit's constructive discharge by creating an intolerable work environment intentionally, knowingly or recklessly with regard to Mx. Kapit's federally and state protected rights, for which Plaintiff seeks punitive damages.

**COUNT 4**
**NYSHRL §290 et seq.**
**Hostile Work Environment Because of Sex**

127.   Plaintiff Mx. Kapit incorporates by reference the preceding paragraphs as if fully set forth herein.

128.   Mx. Kapit is a member of a protected category with regard to sex.

129.   After becoming aware of Mx. Kapit's gender, Defendant QPS's managers instituted a campaign of harassment and discrimination on the basis of sex and gender identity, and adopted adversarial attitudes and hostile demeanors.

130.   This harassment was frequent, physically threatening, and continuous.

131.   Mx. Kapit was targeted for harassment and subjected to a hostile work environment by QPS managers and administrators because of their sex and/or gender identity.

132.   The discriminatory acts were unwelcome to Mx. Kapit.

133.   Mx. Kapit was subjected to inferior terms, conditions and privileges of employment because of their sex and/or gender identity, as detailed herein.

134.   Defendant QPS's managers and administrators made statements that demeaned Mx. Kapit's sex and/or gender identity, as detailed herein.

135.   This hostile environment unreasonably interfered with Mx. Kapit's ability to perform their job duties, by disrupting their relationship to Defendant QPS and its management, by the unreasonable criticism and scrutiny of Mx. Kapit's sex and gender which flowed directly from Defendant QPS's failure to take prompt and effective action to stop the hostile work environment, by Mx. Kapit's need to spend many hours on otherwise unnecessary grievance processes and other means of seeking relief, amongst other reasons, and created working conditions intolerable to a reasonable person.

136.    The effects of the hostile environment alleged herein were felt by Mx. Kapit daily.

137.    The hostile environment was severe, including threats of bodily harm, reasonably

invoking fear of physical confrontations.

138.    Many events contributing to this hostile work environment occurred within the 300-day

period prior to Mx. Kapit's first EEOC charge.

139.    Mx. Kapit perceived the working environment to be abusive or hostile.

140.    A reasonable person in Mx. Kapit's circumstances would consider the working

environment to be abusive or hostile.

141.    Harassment of Mx. Kapit was motivated by their sex and gender.

142.    Defendant QPS was on notice of the hostile work environment, including actual notice by

means of complaints made by Mx. Kapit to Defendant as detailed herein, and vicariously and

constructively by means of the acts perpetrated by Mx. Kapit's direct supervisor and other

managers.

143.    Defendant QPS did not undertake prompt and effective efforts sufficient to stop the

hostile environment detailed herein.

144.    As a direct and proximate result of Defendant QPS's unlawful discrimination, Mx. Kapit

incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of

life, emotional distress, damage to their professional reputation, and other pecuniary and non-

pecuniary losses.

145.    By engaging in the conduct described above, Defendant QPS discriminated against Mx.

Kapit intentionally, knowingly or recklessly with regard to Mx. Kapit's federally and state

protected rights, for which Plaintiff seeks punitive damages.

**COUNT 5**

**NYSHRL §290 et seq.**
**Retaliation**

146.     Plaintiff Mx. Kapit incorporates by reference the preceding paragraphs as if fully set forth herein.

147.     By complaining to Defendant QPS about the discriminatory practices and hostile work environment described herein, opposing said practices and hostile work environment directed at them, Mx. Kapit engaged in activities protected by N.Y. Exec. Law §290.

148.     Mx. Kapit's exercise of protected rights was known to Defendant QPS.

149.     Following and because of Mx. Kapit's protected conduct, Mx. Kapit was subjected to tangible or adverse employment actions.

150.     The actions taken against Mx. Kapit would deter a reasonable employee from making or supporting a complaint of discrimination.

151.     By engaging in the conduct described above, Defendant QPS intentionally retaliated against Mx. Kapit with malice or reckless indifference to Mx. Kapit's state protected rights to oppose practices that are prohibited.

152.     As a direct and proximate result of Defendant's unlawful retaliation, Mx. Kapit has incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to their professional reputation, and other pecuniary and non-pecuniary losses.


**COUNT 6**
**NYSHRL §290 et seq.**
**Constructive Discharge Because of Sex and/or Gender**

153.     Plaintiff Mx. Kapit incorporates by reference the preceding paragraphs as if fully set forth herein.

154.    Mx. Kapit is a member of a protected category with regard to sex and gender.

155.    The effect of Defendant QPS's acts complained of above was to create an intolerable

work environment.

156.    Mx. Kapit perceived the working environment to be intolerably abusive or hostile.

157.    A reasonable person in Mx. Kapit's circumstances would consider the working

environment to be intolerably abusive or hostile.

158.    Defendant QPS was on notice of the hostile work environment, including actual notice by

means of complaints made by Mx. Kapit to Defendant as detailed herein, and vicariously

and constructively by means of the acts perpetrated by Mx. Kapit's direct supervisor.

159.    The effect of the intolerable work environment was such that Mx. Kapit's resignation was

not voluntary and amounts to a constructive discharge by Defendant QPS.

160.    As a direct and proximate result of Defendant QPS's unlawful constructive discharge,

Mx. Kapit has incurred damages including but not limited to lost wages, humiliation, loss of

enjoyment of life, emotional distress, damage to professional reputation, and other pecuniary

and non-pecuniary losses.

161.    By engaging in the conduct described above, Defendant QPS caused Mx. Kapit's

constructive discharge by creating an intolerable work environment intentionally, knowingly

or recklessly with regard to Mx. Kapit's federally and state protected rights, for which

Plaintiff seeks punitive damages.

**COUNT 7**
**NYCHRL §8-101(a)**
**Discrimination Because of Sex, Gender, and Gender Identity**

162.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

163.    Defendants discriminated against Plaintiff in the terms, conditions, or privileges of

employment based on their sex, gender, and/or gender identity by denying them work

opportunities afforded to other, gender-conforming employees and allowing a hostile work

environment because of their gender.

164.    As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff

incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of

life, emotional distress, physical injury, damage to their professional reputation, and other

pecuniary and non-pecuniary losses, which damages would not have occurred but for

Defendants' discrimination.

165.    By engaging in the conduct described above, Defendant QPS terminated Mx. Kapit

intentionally, knowingly or recklessly with regard to Mx. Kapit's federally and state

protected rights, for which Plaintiff seeks punitive damages.


**COUNT 8**
**NYCHRL §8-101(a)**
**Retaliation**

166.    Plaintiff Mx. Kapit incorporates by reference the preceding paragraphs as if fully set forth

herein.

167.     The effect of Defendant QPS's acts complained of above was to deprive Mx. Kapit of equal employment opportunities as an employee because of retaliation for their complaints of discrimination in violation of NYCHRL § 8-107, et seq.

168.     By complaining to Defendant QPS about the discriminatory practices and hostile work environment described herein and opposing said practices and hostile work environment directed at them, Mx. Kapit engaged in activities protected by NYCHRL § 8-107, et seq.

169.     Mx. Kapit's exercise of protected rights was known to Defendant QPS, because the complaints were made to Defendant during their employment.

170.     The action taken against Mx. Kapit up to and including their investigation, forced administrative leave and constructive discharge, were reasonably likely to deter a person from engaging in protected activities.

171.     Defendant QPS is directly liable for the deprivation of Mx. Kapit's rights by exercising its authority to retaliate against them for their protected activities.

172.     Defendant QPS aided and abetted in the deprivation of Mx.. Kapit's rights because of retaliation against them for their protected activities by actually participating in the conduct giving rise to their claim for retaliation.

173.     As a direct and proximate result of Defendant QPS's unlawful discrimination, Mx. Kapit has incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to professional reputation, and other pecuniary and non-pecuniary losses.

174.     By engaging in the conduct described above, Defendant QPS terminated Mx. Kapit intentionally, knowingly or recklessly with regard to Mx. Kapit's federally and state protected rights, for which Plaintiff seeks punitive damages.

**COUNT 9**
**NYCHRL §8-101(a)**
**Constructive Discharge Because of Sex and/or Gender**

175.    Plaintiff Mx. Kapit incorporates by reference the preceding paragraphs as if fully set forth herein.

176.    Mx. Kapit is a member of a protected category with regard to sex and gender.

177.    The effect of Defendant QPS's acts complained of above was to create an intolerable work environment.

178.    Mx. Kapit perceived the working environment to be intolerably abusive or hostile.

179.    A reasonable person in Mx. Kapit's circumstances would consider the working environment to be intolerably abusive or hostile.

180.    Defendant QPS was on notice of the hostile work environment, including actual notice by means of complaints made by Mx. Kapit to Defendant as detailed herein, and vicariously and constructively by means of the acts perpetrated by Mx. Kapit's direct supervisor.

181.    The effect of the intolerable work environment was such that Mx. Kapit's resignation was not voluntary and amounts to a constructive discharge by Defendant QPS.

182.    As a direct and proximate result of Defendant QPS's unlawful constructive discharge, Mx. Kapit has incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to professional reputation, and other pecuniary and non-pecuniary losses.

183.    By engaging in the conduct described above, Defendant QPS caused Mx. Kapit's constructive discharge by creating an intolerable work environment intentionally, knowingly or recklessly with regard to Mx. Kapit's federally and state protected rights, for which Plaintiff seeks punitive damages.

**MANDATORY RECOVERY OF ATTORNEY FEES AND COSTS**

184.    Plaintiff is mandatorily entitled to recover their attorneys' fees and costs pursuant to

provisions of Title VII, N.Y. Exec. §297(10) and N.Y.C. Administrative Code § 8-120.

**JURY DEMAND**

185.    Plaintiff hereby demands a trial by jury of all issues triable by a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

    A.  Declare that the acts, practices, and omissions complained of herein are unlawful and

violate Title VII;

    B.  Permanently enjoin Defendant, its officers, agents, servants, employees, attorneys, and all

persons in active concert or participation with them from engaging in the unlawful

conduct of discriminating against employees based on sex and gender;

    C.  Order Defendant to institute and carry out policies, practices, programs, and training

which provide equal employment opportunities for employees who are non-binary and

gender non-conforming, and which eradicate the effects of Defendant's past and present

unlawful employment practices;

    D.  Order other affirmative relief necessary to eradicate the effects of Defendant's unlawful

employment practices;

    E.  Direct Defendant to pay for past and future non-pecuniary losses resulting from the

unlawful practices complained of in the foregoing paragraphs, including emotional pain,

suffering, inconvenience, loss of enjoyment of life, and humiliation, in an amount to be determined at trial;

F. Direct Defendant to pay Plaintiff back pay, in an amount to be determined at trial;

G. Award Plaintiff's attorneys' fees, costs, and disbursements as provided by law;

H. Direct Defendant to pay Plaintiff punitive damages, in an amount to be determined at trial; and

I. Award such additional relief as justice may require.

Dated: May 21, 2020.

Respectfully submitted,

s/ Jillian T. Weiss

Jillian T. Weiss, Esq. (JW 4542)
Law Office of Jillian T. Weiss, P.C.
76 Charles Street, No. 1E
New York, New York 10014
(845) 709-3237
Fax (845) 684-0160
jweiss@jtweisslaw.com

*Attorney for the Plaintiff*